UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RICHARD J. LOVATO | ) | |
|        Plaintiff, | ) | |
|   v. | ) | |
| | ) | |
| ANDREW SAUL, | ) | Cause 2:19-CV-294-RLM |
| Commissioner of Social Security | ) | |
| | ) | |
|        Defendant. | ) | |

OPINION AND ORDER

Richard Lovato seeks judicial review of the final decision of the Commissioner of Social Security's decision denying his applications for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 423 *et seq*. The court has jurisdiction over this action under 42 U.S.C. §§ 405(g), and heard oral argument on June 8. For the reasons summarized below, the court reverses the Commissioner's decision and remands for further proceedings.

Mr. Lovato was forty-two in January of 2015, the alleged onset of disability. He applied for benefits based on a variety of physical impairments, including diabetes, chronic kidney disease, degenerative disc disease, and obesity. His applications were denied initially, upon reconsideration, and after an administrative hearing in June 2018. The ALJ concluded at the hearing that Mr. Lovato had the ability to perform light work with limitations. The ALJ determined that Mr. Lovato couldn't perform his past relevant work, but that he could perform other work that existed in significant numbers in the national economy,

1

and so he wasn't disabled within the meaning of the Act from January 19, 2015 through June 21, 2018. More specifically, the ALJ found that:

- Mr. Lovato had these severe medically determinable impairments: diabetes, chronic kidney disease, degenerative disc disease, and obesity.

- Mr. Lovato had these nonsevere impairments: diverticulitis, high cholesterol, contact dermatitis, peripheral atherosclerotic disease, and obesity.

- Mr. Lovato had the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) except he can't climb ladders, ropes, or scaffolds; unable to kneel or crawl; can occasionally climb ramps or stairs, balance, stoop, and crouch; occasionally be exposed to extreme cold, extreme heat, wetness, and humidity; occasionally be exposed to hazards such as unprotected heights or moving mechanical parts; and performing simple, routine, and repetitive tasks due to pain.

- Mr. Lovato could perform other work that existed in significant numbers in the national economy, including packer (DOT 559.687-074, 100,000 jobs nationally), garment sorter (DOT 222.678-014, 101,900 jobs nationally), and mailroom clerk (DOT 209.687-026, 106,100 jobs nationally).

[AR 17-27].

When the Appeals Council denied Mr. Lovato's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

The ALJ erred when she determined the significance of raw medical evidence in two instances. First, the ALJ exercised medical judgment to determine that Dr. Hoehn's opinion was inconsistent with the record. An ALJ can't ignore relevant medical evidence and use her judgment to make her own medical findings, but can discuss and weigh the medical evidence and make appropriate inferences from that evidence. Olsen v. Colvin, 551 F. App'x 868, 874 (7th Cir. 2014). The Commissioner argues that the ALJ was simply fulfilling her duty by making a required RFC finding, but the ALJ used that determination to discount Dr. Hoehn's medical opinion, not to form a RFC. The ALJ thought that Mr. Lovato's normal gait during several examinations was inconsistent with Dr. Hoehn's medical opinion that Mr. Lovato couldn't stand or walk for more than 30 minutes at a time. The ALJ referenced no medical opinion that a person with several normal gait findings could stand or walk for more than 30 minutes at a time. The determination that normal gait findings equate to an ability to stand or walk for more than 30 minutes at a time is more than the "appropriate inferences" that an ALJ is permitted to make. The ALJ impermissibly used her own judgment to determine that the examination results and Dr. Hoehn's opinion were inconsistent.

The ALJ next determined the significance of medical evidence in her appraisal of the state agency physician's opinions. The ALJ gave some weight to the state agency physicians' opinions but found that Mr. Lovato had more limitations than the agency physicians thought because of additional evidence submitted after the physicians reviewed the record. Mr. Lovato argues that by

determining what limitations the additional evidence supported rather than submitting the updated record for additional medical review, the ALJ evaluated the significance of medical findings on her own. The Commissioner responds that Mr. Lovato hasn't cited to any record evidence to show that additional limitations on walking and standings would have been supported by the record had the state agency physicians reviewed the updated record. An ALJ needn't obtain updated or additional medical opinions unless the new evidence might cause the initial opinion to change. Buckhanon ex rel. J.H. v. Astrue, 368 Fed. App'x 674, 679 (7th Cir. 2010). The ALJ's decision indicates that the new evidence might have changed the state agency determination by citing to new evidence and providing a more restrictive RFC because of the updated record. Instead of submitting the evidence for medical review, the ALJ examined the office treatment notes from Dr. Hoehn and the physical therapy records to determine Mr. Lovato's medical condition from the raw medical data. The ALJ erred by relying on her own medical judgment rather than submitting the new evidence for medical review.

Accordingly, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings.

SO ORDERED

ENTERED:   June 16, 2020

　　　　　　　　　　　　　　　　　　　 /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　Judge, United States District Court